12-3313-cr
*United States v. Crandall*

# In the

# United States Court of Appeals

# For the Second Circuit

————

AUGUST TERM 2013
No. 12-3313-cr

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

GEORGE S. CRANDALL, AKA George Crandall,
*Defendant-Appellant,*

————

Appeal from the United States District Court
for the Northern District of New York.
No. 10 CR 36-1 (FJS) — Frederick J. Scullin, Jr., *Judge.*

————

ARGUED: OCTOBER 29, 2013
DECIDED: APRIL 10, 2014

————

Before: WALKER, CABRANES, and PARKER, *Circuit Judges.*

————

Defendant George Crandall appeals the judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *Judge*) convicting him of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Crandall contends that a continuous

hearing impairment rendered his trial constitutionally defective in violation of his Sixth Amendment rights to, *inter alia*, be present, assist in his defense, and confront witnesses against him. We hold that the Sixth Amendment requires reasonable accommodations for hearing-impaired criminal defendants during judicial proceedings and that such accommodations must be commensurate with the severity of the hearing impairment. Where a criminal defendant does not notify the District Court of the impairment, however, he is only entitled to accommodations commensurate with the degree of difficulty that was, or reasonably should have been, clear or obvious to the District Judge.

We hold, based upon a review of the record, that Crandall received accommodations commensurate with the degree of difficulty that was, or reasonably should have been, clear or obvious to the District Judge.

Accordingly, we **AFFIRM** the judgment of the District Court.

————

PAUL J. ANGIOLETTI, Staten Island, NY, *for Appellant George S. Crandall*.

PAUL D. SILVER, Assistant United States Attorney, (Richard S. Hartunian, United States Attorney for the Northern District of New York, Brenda K. Sannes, Assistant United States Attorney, *on the brief*), Syracuse, NY, *for Appellee United States of America*.

————

JOSÉ A. CABRANES, *Circuit Judge*:

Defendant-appellant George Crandall ("Crandall") was convicted in the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *Judge*), after trial by jury, of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[1] On appeal, Crandall argues that his due process rights were violated because of a hearing impairment that allegedly prevented him from exercising his Sixth Amendment rights to, *inter alia*, be present, assist in his defense, and confront witnesses against him.[2]

We hold that the Sixth Amendment requires reasonable accommodations for hearing-impaired criminal defendants during judicial proceedings and that such accommodations must be commensurate with the severity of the hearing impairment. Where

---

[1] Under 18 U.S.C. § 922(g)(1), "[i]t shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Under 18 U.S.C. § 924(a)(2), "[w]hoever knowingly violates [18 U.S.C. § 922(g)] shall be fined as provided in this title, imprisoned not more than 10 years, or both."

[2] Additional claims raised by Crandall in this appeal are: (1) a challenge to the sufficiency of the evidence at trial; (2) that the jury instructions were flawed in numerous ways, including the failure to include (a) an instruction on the need for "substantial similarity" between the date of the offense charged in the indictment and that of the offense proved at trial, (b) the definition of "firearm" and an instruction that Crandall needed to know that what he possessed was a firearm, (c) a limiting instruction regarding evidence of Crandall's prior felony conviction, and (d) an instruction that exercising dominion and control over a premises does not require a finding of dominion and control over firearms or ammunition found in that premises; (3) that the District Court incorrectly held, after a suppression hearing, that Crandall had heard and understood his *Miranda* rights; (4) that his trial counsel provided ineffective assistance; and (5) that the sentence imposed was unreasonable. After careful consideration, we conclude that these claims are meritless.

a criminal defendant does not notify the District Court of the impairment, however, he is only entitled to accommodations commensurate with the degree of difficulty that was, or reasonably should have been, clear or obvious to the District Judge.

We hold, based upon a review of the record, that Crandall received accommodations commensurate with the degree of difficulty that was, or reasonably should have been, clear or obvious to the District Judge.

Accordingly, we **AFFIRM** the judgment of conviction.

## BACKGROUND

On January 7, 2010, a federal Grand Jury returned an indictment charging Crandall with one count of felon-in-possession of a firearm and one count of felon-in-possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[3]

On March 16, 2011, the District Court held a suppression hearing to determine whether to admit statements made by Crandall during his arrest. During the first witness's testimony, Crandall's counsel stated, "Your Honor, at this time we'd like to interject, Mr. Crandall has a hearing problem, he does have his hearing aids in but he's still having difficulty hearing." Gov't App. 7. The District Judge asked the clerk to turn up the volume on the microphone, and after the clerk said it was at the highest volume, the Judge instructed the witness "to speak up." *Id*. at 8. There was no other indication by Crandall or his counsel that Crandall was thereafter having difficulty hearing during the hour-long proceeding.

---

[3] The only issue addressed in this opinion relates to Crandall's rights during judicial proceedings. Accordingly, we need not address in depth the basis for the charges against him.

Crandall's jury trial took place before Judge Scullin on June 27-28, 2011. At the beginning of jury selection, the District Judge asked Crandall whether his court-provided hearing device was functioning, and Crandall responded that it was "making a fuzzy noise." Gov't App. 66. The Judge replied, "You might want to try without it because I think the acoustics in here are good enough." *Id.* Neither Crandall nor his counsel suggested that the Judge was mistaken. At another point, the Judge admonished Crandall for speaking loudly to his investigator; Crandall stated that he could not hear the Judge's admonishment clearly, and that he "didn't think [he] was speaking out loud." *Id.* at 133-34.

Crandall testified at trial, adequately responding to questions on both direct and cross examination. At one point during his testimony, Crandall asked his lawyer to push the microphone closer, and on several occasions asked that a question be repeated.

During a cross-examination of one witness, Crandall's counsel asked if the witness knew that Crandall "has very poor hearing?" Gov't App. 92. The witness responded, "I know he has told me in the past he has poor hearing. I also know he has heard me when I talk to him." *Id.* Crandall's counsel then stated, "[H]e has an aid here today. Are you aware [ ] that he is using an aid?," at which point counsel moved on to another question. *Id.*

On June 28, 2011, the jury convicted Crandall on both counts of the indictment, and he was released on bail pending sentencing.

After Crandall allegedly violated the conditions of his presentence release, Judge Scullin held a bail revocation hearing on March 8, 2012. At the outset of the proceeding, defense counsel informed the Judge that he "want[s] to make certain that [his] client hears what's going on in this proceeding." Gov't App. 176. In response, the Judge instructed defense counsel to "[a]dvise your

client if he has difficulty hearing, to advise you and you can advise me." Gov't App. 176-77. Counsel so notified Crandall, who then responded that he was not wearing his hearing aid. The Judge instructed the testifying witness to speak into the microphone as loudly as he could, and neither Crandall nor his counsel thereafter notified the Judge of hearing-related difficulties. Crandall testified during this proceeding as well, and after his testimony, the Judge noted that "[h]e hears quite well." *Id*. at 179.

Crandall was sentenced on August 9, 2012. At his sentencing hearing, Crandall submitted a handwritten "Sentencing Statement Affidavit" to the District Court asserting numerous claims including, for the first time, that "I could not hear my trial, witnesses [*sic*] testimony, or the Judge [*sic*] ruling. I could not even communicate with my Attorney because he tried wispering [*sic*] and it was on deaf ears." Appellant's App. 128. He claimed, also for the first time, that this was due in part to the fact that the hearing device—the buzzing of which he had complained about before jury selection—had subsequently gone dead. Crandall wrote that this "impaired my reason and comprehension and hampered my ability to effectively consult and communicate with my Court appointed counsels [*sic*] which was physical as well as mental." *Id*. at 129.

The District Court sentenced Crandall principally to two concurrent terms of thirty-three months' imprisonment, the top of the applicable guidelines range identified by the United States Probation Office in its Pre-Sentence Investigation Report. After the Court imposed the sentence, Crandall stated, "Your Honor, I couldn't make out half what you were sayin', but is there any way I can get a copy of [the sentencing minutes] to know what you're sayin' . . . ." *Id*. at 118.

This timely appeal followed.

## DISCUSSION

On appeal, Crandall contends that his hearing impairment rendered his trial constitutionally defective in violation of his Sixth Amendment rights to, *inter alia*, be present, assist in his defense, and confront witnesses against him.  He claims further that the District Court should have known about his hearing disability, which the District Court "either dealt with half-heartedly or ignored" altogether.  Appellant's Br. 25.

As a preliminary matter, whether Crandall adequately raised this issue during the proceedings below affects our standard of review.  We review a claim raised in the District Court for "harmless error," *see* Fed. R. Crim. P. 52(a), whereas a claim not raised in the District Court is reviewed under the more deferential "plain error" standard, *see* Fed. R. Crim. P. 52(b).[4]  We conclude that the claim of a continuous hearing impairment was not adequately raised below.[5]

---

[4] The Supreme Court has instructed that a finding of "plain error" requires that:

> (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*United States v. Tarbell*, 728 F.3d 122, 126 (2d Cir. 2013) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)).  In other words, "[t]o be plain, an error of the district court must be obviously wrong in light of existing law." *United States v. Youngs*, 687 F.3d 56, 59 (2d Cir. 2012) (internal quotation marks omitted).

[5] While the record reveals that Judge Scullin was alerted to Crandall's difficulty hearing on several occasions, there is no indication that Crandall or his attorney ever made Judge Scullin aware that Crandall's hearing was an ongoing problem requiring a continuous solution.  Crandall concedes as much, stating in his brief that "the record does not contain instances of Crandall (or his attorney) proactively informing the court of

Nevertheless, out of an abundance of caution, we note that because we find no error in the District Court's actions, the outcome would be the same regardless of the standard of review.

## A. Sixth Amendment Right to Accommodations

Four decades ago, the Supreme Court held that "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). This right stems from the Sixth Amendment's Compulsory Process and Confrontation Clauses, and guarantees a criminal defendant is provided with "a meaningful opportunity to present a complete defense." *Hawkins v. Costello*, 460 F.3d 238, 243 (2d Cir. 2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). In practical terms, this means that a criminal defendant must "possess sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding"; otherwise, the proceeding would be merely "an invective against an insensible object." *United States ex rel. Negron v. New York*, 434 F.2d 386, 389 (2d Cir. 1970) (internal quotation marks omitted).

Relying on these concepts, Crandall now argues that the District Court failed to take adequate steps to accommodate his hearing impairment to ensure that he was able to understand and participate in the proceedings, and that this failure rendered his trial constitutionally defective. What the Sixth Amendment requires for those with hearing impairments is a matter of first impression for our Court, although our jurisprudence regarding non-English speaking defendants provides considerable guidance.

---

hearing difficulties . . . ." Appellant's Br. 25. Similarly, Crandall never moved for a mistrial based upon an allegation that he had been unable to hear the proceedings.

We now hold, as an initial matter, that the Sixth Amendment right to participate in one's own trial encompasses the right to reasonable accommodations for impairments to that participation, including hearing impairments. *Cf. Negron*, 434 F.2d at 390 (holding that a defendant who spoke no English, and "s[a]t in total incomprehension as the trial proceeded," was not sufficiently "present" to satisfy the dictates of the Sixth Amendment).

Yet the Sixth Amendment does not create an absolute right to the elimination of all difficulties or impairments that may hinder a criminal defendant's capacity to perfectly comprehend, and participate in, court proceedings. Perfect participation by a criminal defendant is optimal, but perfection is not required by the Sixth Amendment. *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984) (noting that the Supreme Court "has long held that a litigant is entitled to a fair trial but not a perfect one, for there are no perfect trials" (internal quotation marks and alteration omitted)).

Accordingly, the Sixth Amendment right to hearing-related accommodations is limited to those reasonable accommodations that are requested by the defendant before or during trial, or the need for which is, or should reasonably be, clear or obvious to the district judge. *See Valladares v. United States*, 871 F.2d 1564, 1566 (11th Cir. 1989) (Retired Justice Lewis F. Powell, Jr., sitting by designation) ("To allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate [language] translation would be an open invitation to abuse.").

In reaching this conclusion, we agree with the reasoning of several district courts that have addressed similar circumstances. *See, e.g.*, *Hoke v. Miller*, No. 02-cv-0516, 2007 WL 2292992, at *6 (N.D.N.Y. Aug. 6, 2007) ("[T]he trial court and prosecutor were

made aware of Petitioner's hearing difficulties and made accommodations to address the issue.  Petitioner never requested that additional accommodations be made or advised the trial court that he was unable to participate meaningfully in his defense.  There also does not appear to be any evidence that Petitioner's impairment was so obvious that the trial court could reasonably have been expected, *sua sponte,* to take further measures."); *Phillips v. Miller*, No. 01 Civ. 1175(DF), 2000 WL 33650803, at *13 (S.D.N.Y. Dec. 3, 2000) ("In this case, Petitioner never requested any interpretive assistance.   Thus, the only remaining question is whether Petitioner's hearing-impairment was obvious to the trial court, so as to have required the court to act *sua sponte* to provide interpretive assistance.").

This standard is also consistent with the statute governing the provision of interpreters for the hearing-impaired in federal courts, the Court Interpreters Act, 28 U.S.C. § 1827.[6]  The statute states that interpretation services are to be made available in federal proceedings, "if the presiding judicial officer determines on such officer's own motion or on the motion of a party" that the party or a witness "suffers from a hearing impairment . . . so as to inhibit such party's [or witness's] comprehension of the proceedings or communication with counsel or the presiding judicial officer . . . . " *Id*. § (d)(1).  The statute clearly anticipates that the presiding judicial officer—typically, a district judge—is to determine whether an interpreter, including a sign-language interpreter, *see id*. § (l), is warranted.  The judge's inquiry is to be triggered either when a party or witness raises the issue, or when the judge "determines" of his own volition that it should be raised.

---

[6] Since Crandall brings only a constitutional claim, and does not assert that the District Judge violated his duty under the Court Interpreters Act, we invoke the statute only to inform our constitutional analysis.

## B. Adequacy of the Accommodations Provided

Having set forth the standard to be applied in assessing when a defendant is entitled under the Sixth Amendment to accommodations for hearing impairments during judicial proceedings, we now assess what, if any, accommodations the District Court was required to make for Crandall, in view of what the Court knew, or should have perceived, about his hearing impairment.

### 1. The District Court Did Not Have Notice of an Ongoing Hearing Impairment

As Crandall concedes, he did not notify the District Judge of a continuous inability to hear the proceedings, either before or during trial. *See* Def. Br. at 25 (stating that "the record does not contain instances of Crandall (or his attorney) proactively informing the court of hearing difficulties . . . .").[7]  Having failed to notify the

---

[7] Among other reasons, because Crandall did not assert, and there was no reason to believe, that he was unable to hear the proceedings on an ongoing basis, his reliance on *Ferrell v. Estelle*, a habeas case from the Fifth Circuit, is misplaced.  568 F.2d 1128 (5th Cir. 1978), *mandate withdrawn on other grounds*, 573 F.2d 867 (5th Cir. 1978).  There, the petitioner, who had become completely deaf between the time of the alleged crime and the time of his trial, asserted that the minimal accommodations that had been offered to him at trial constituted a violation of his right to confront the witnesses against him and to assist in his own defense.  *Id.* at 1129-30.  Before trial began, the petitioner's attorney made a formal request to the judge that stenographers be appointed to simultaneously transcribe the trial in "real time."  *Id.* at 1130.  This request was denied by the judge, who did not explore alternative accommodations, but rather, assured counsel that he would provide him with as much time as needed to confer with his client.  *Id.*  Defense counsel ultimately requested a recess to confer with the petitioner only twice during the course of the trial.  *Id.*  The Fifth Circuit granted Ferrell a new trial on the basis of *ineffective assistance of counsel*, after finding that "Ferrell's attorney presented only the transcript alternative and then failed to take full advantage of the court's willingness to grant frequent recesses, [and so] he left in doubt whether he failed in his duty to court and client."  *Id.* at 1133.

Judge of a continuous inability to hear the proceedings, Crandall was only entitled to accommodations insofar as his impairment was, or reasonably should have been, clear or obvious to the District Judge.

While the record contains instances in which Crandall apparently could not hear a particular question or statement, there is considerable evidence that his hearing faculties were adequate, and appeared as such to the District Judge. Crandall testified responsively at trial, as well as during his bail revocation proceeding. During Crandall's testimony in the bail revocation hearing, defense counsel stated that he wanted to make sure Crandall could hear him; and the District Judge responded, "He can hear you." Gov't App at 171. When Crandall's testimony was concluded, the District Judge remarked that "[h]e hears quite well." Gov't App. at 172.[8]

The District Judge's findings on the record regarding Crandall's hearing capability at various points during the proceedings before him are entitled to customary appellate deference, inasmuch as he had the benefit of personally observing Crandall's demeanor and behavior in the courtroom. *Cf. United*

---

[8] It remains unclear from the record how Crandall obtained the initial court-provided hearing device. That Crandall had such a device certainly would have alerted the District Judge to some hearing difficulty as an initial matter, but would have also justified the belief that the impairment had been addressed. Crandall notified the Judge before jury selection began that the device was emitting a "fuzzy sound," and the Judge instructed him to try hearing without it and rely upon the good acoustics in the courtroom. Gov't App. at 66. After that, the Judge was able to observe Crandall's hearing capabilities, which he deemed adequate, and was never notified otherwise. The sentencing affidavit handwritten by Crandall constituted the first notice the District Court had that Crandall claimed to have experienced continuous hearing difficulty throughout the proceedings; it was submitted at his sentencing on August 9, 2012, long after the trial had concluded.

*States v. Weissman*, 195 F.3d 96, 99 (2d Cir. 1999) ("A Court of Appeals must accord great deference to the trial court's findings regarding credibility because the trial judge is in the best position to evaluate a witness's demeanor and tone of voice as well as other mannerisms that bear heavily on one's belief in what the witness says." (internal quotation marks omitted)).[9]

## 2. The Accommodations the District Court Made for Crandall Were Adequate in Light of What it Knew or Reasonably Should Have Known

Insofar as Crandall's various, isolated indications of hearing-related trouble put, or reasonably should have put, the District Court on notice that Crandall had some degree of difficulty, we conclude that the District Court provided him with adequate accommodations.

The degree of accommodations required varies from case to case on a sliding scale, depending on the degree of severity of the impairment. *Cf. United States v. Sanchez*, 483 F.2d 1052, 1056 (2d Cir.

---

[9] The District Judge's observations regarding Crandall's hearing capabilities find support in the evidence presented at trial as well. While Crandall's claim on appeal relates only to hearing-related difficulties he allegedly experienced during the relevant judicial proceedings, he claims that his hearing impairment extended as far back as the time of his arrest. However, the trial evidence included transcripts of several phone calls Crandall conducted while imprisoned, which reveal him to be capable of normal, unassisted conversation. Two ATF agents who arrested Crandall on the federal charges and transported him by car to the federal detention facility in Albany both testified to having had a "continuous," "back and forth" conversation with him during the forty-five to fifty minute drive. Gov't App. at 32-33. During that otherwise regular interaction, there were only minor manifestations of difficulty, such as Crandall's saying that he was hard of hearing and asking them to speak up, and his inching forward in his seat.

1973) (lack of Spanish interpreter did not violate the Sixth Amendment where Spanish-speaking defendant "had facility with the English language" and was provided Spanish-speaking counsel by the court); *United States v. Diaz Berrios*, 441 F.2d 1125, 1127 (2d Cir. 1971) (rejecting constitutional challenge to conviction where defendant spoke no English but received "continuous translation" throughout trial). And as we have already explained, if a defendant does not notify the district judge of the impairment, he is only entitled to accommodations insofar as his impairment was, or reasonably should have been, clear or obvious to the District Judge.

The determination of where a particular defendant falls on the spectrum of disability, and what accommodations are warranted based upon the degree of disability, is a determination to be made in the first instance by the District Court. *Cf. United States v. Sandoval*, 347 F.3d 627, 632 (7th Cir. 2003) (noting, in a case brought under the Court Interpreters Act involving interpretation for a Spanish-speaking defendant, that "[t]he district court is afforded wide discretion in implementing the [ ] Act because it is in the best position to evaluate the need for and the performance of interpreters"); *Valladares*, 871 F.2d at 1566 (noting, in another case involving the sufficiency of language translation for a Spanish-speaking defendant, that "[b]ecause the proper handling of translation hinges on a variety of factors . . . the trial judge, who is in direct contact with the defendant, must be given wide discretion").

We conclude that, in light of what the District Court knew, namely that Crandall had *some* difficulty hearing at times, the District Court did not err by determining that the difficulty could be more than adequately addressed in the normal course through repetition and other instructions. The Judge made such accommodations throughout the proceedings, such as instructing witnesses to speak louder, having Crandall move closer to the

bench, and instructing defense counsel to notify him if Crandall was having difficulty. We hold that these accommodations were commensurate with the degree of difficulty that was, or reasonably should have been, clear or obvious to the District Judge.

Accordingly, in the circumstances presented, the Judge did not err in failing to provide Crandall with any additional accommodations.

## CONCLUSION

To summarize, we hold that:

(1) The Sixth Amendment requires that reasonable accommodations be made for hearing-impaired criminal defendants during judicial proceedings.

(2) The degree of accommodations provided must be commensurate with the severity of the impairment.

(3) Where a criminal defendant does not notify the District Court of the impairment, he is only entitled to accommodations commensurate with the degree of difficulty that was, or reasonably should have been, clear or obvious to the District Judge.

(4) Here, Crandall did not notify the District Court of a continuous hearing impairment, and his alleged impairment was not, nor should have been, clear or obvious. Hence, there was no error in the District Court's failure to recognize the purportedly continuous impairment.

(5) In light of what the District Court knew, or reasonably should have known, about Crandall's hearing difficulties—that Crandall had *some* difficulty hearing at times—the

accommodations it afforded throughout the proceedings, as complaints arose, were commensurate with the apparent severity of the impairment and, accordingly, were sufficient under the Sixth Amendment.

For the reasons set out above, we **AFFIRM** the judgment of the District Court, entered November 27, 2012.