15-3903-ag
American Recycling & Mfg. Co., Inc. v. Sec'y of Labor

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of January, two thousand seventeen.

PRESENT: REENA RAGGI,
DENNY CHIN,
RAYMOND J. LOHIER, JR.,
*Circuit Judges*.

------------------------------------------------------------------------

AMERICAN RECYCLING & MANUFACTURING CO., INC.,

*Petitioner*,

v.                                      No. 15-3903-ag

SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,

*Respondent*.

------------------------------------------------------------------------

APPEARING FOR PETITIONER:        MARK S. DREUX (Allen G. Reiter, Arent Fox LLP, New York, New York; Alexandra M. Romero, Arent Fox LLP, Washington, D.C., *on the brief*), Arent Fox LLP, Washington, D.C.

APPEARING FOR RESPONDENT:        BRIAN A. BROECKER, Attorney (M. Patricia Smith, Solicitor of Labor; Ann S. Rosenthal, Associate Solicitor of Labor for Occupational Safety and Health; Heather R. Phillips, Counsel

for Appellate Litigation, *on the brief*), U.S. Department of Labor, Washington, D.C.

Appeal from an October 15, 2015 final order of the Occupational Safety and Health Review Commission (Dennis L. Phillips, *Administrative Law Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED in part and GRANTED in part.

Petitioner American Recycling & Manufacturing Co., Inc. ("ARM") challenges a decision of the Occupational Safety and Health Review Commission ("Commission") affirming two citations issued to ARM by the Occupational Safety and Health Administration ("OSHA") in connection with a December 3, 2012 amputation incident in the woodshop at an ARM facility. *See American Recycling & Mfg. Co.*, 25 BNA OSHC 1709 (Nos. 13-1101 & 13-1102, 2015) (ALJ). We will uphold such an agency decision "unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 226 (2d Cir. 2002) (quoting 5 U.S.C. § 706(2)(A)). We will uphold factual findings informing such a decision as long as they are supported by substantial evidence, *see New York State Elec. & Gas Corp. v. Sec'y of Labor*, 88 F.3d 98, 104 (2d Cir. 1996) (quoting 29 U.S.C. § 660(a)), a threshold that is met by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (internal quotation marks omitted). We afford particular deference to agency credibility determinations. *See AJP Constr., Inc. v. Sec'y of Labor*, 357 F.3d 70, 73 (D.C. Cir. 2004); *cf. Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 165–66 (2d Cir. 2008).

In conducting our review, we assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to deny in part and grant in part ARM's petition.

1.    Citation for Failing To Anchor Fixed Machinery

ARM first challenges its citation for violating 29 C.F.R. § 1910.212(b), which requires that "[m]achines designed for a fixed location . . . be securely anchored to prevent walking or moving."  It argues that the Commission's determination that the cited pop-up saw is "designed for a fixed location" is unsupported by substantial evidence.   The record defeats this argument.   ARM's own witnesses testified that "the machine was heavy," J.A. 249, and "not something [a worker] could move by hand," *id.* at 225.   This testimony, together with the saw's lack of wheels and compliance officer testimony of anchoring holes observed in the saw's feet prior to the accident, suffice to support the Commission's design determination.

In urging otherwise, ARM points to (1) testimony of the employee who bolted the saw down after the accident that he thought—but could not remember—that he had to drill through the saw's feet to insert the anchoring bolts, and (2) the lack of clarity in a photograph taken of the saw's feet before it was anchored.   Whatever questions this evidence might raise, it was not so strong as to preclude a reasonable finding from the totality of evidence that the saw was designed for a fixed location.   *See United States v. Corbett*, 750 F.3d 245, 250 (2d Cir. 2014); *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 753 (2d Cir. 2004) (discussing deferential appellate standard of review for post-trial findings of trier of fact).

3

ARM contends that, even if § 1910.212(b) applies, it did not violate that standard because the saw was anchored by its own weight so as to preclude the need for further anchoring. In concluding otherwise, the Commission relied on the testimony of woodshop supervisor Joel Rivera, whom it found "very credible," S.P.A. 85, and who testified that he had used the saw multiple times per week before the accident and that it moved regularly during such use. ARM challenges Rivera's credibility based on one of its owner's testimony that the saw was "so heavy that it could not be moved *without a forklift*." Pet'r's Reply Br. 6 (emphasis in original). The Commission acted well within its discretion in rejecting this testimony as "self-serving and not persuasive." S.P.A. 85; *see United States v. Messina*, 806 F.3d 55, 64 (2d Cir. 2015) (stating that factfinder can resolve evidentiary inconsistencies by rejecting one party's evidence). ARM presented no evidence as to the weight of the saw to corroborate the owner's account or to undermine Rivera's testimony. Similarly, the Commission was entitled to reject the testimony of ARM employees who professed unawareness of the saw moving during use because three of them did not operate the saw and the other two did so only infrequently or not at the relevant time. *See United States v. Mergen*, 764 F.3d 199, 204 (2d Cir. 2014) ("We defer to the [factfinder's] determination of the weight of the evidence and the credibility of the witnesses, and to [its] choice of the competing inferences that can be drawn from the evidence." (internal quotation marks omitted)). In these circumstances, a reasonable mind might credit Rivera and, based on the record as a whole, find, as the Commission did, that ARM violated § 1910.212(b).

4

2.      <u>Citation for Failing To Protect Saw Pedal Against Accidental Tripping</u>

ARM also challenges its citation for violating § 1910.213(b)(6)'s requirement that "[e]ach operating treadle shall be protected against unexpected or accidental tripping." It argues that the operating pedal of its pop-up saw cannot qualify as a treadle because a treadle is used to operate a machine driven by continuous foot power.   The Secretary of Labor, however, interprets § 1910.213(b)(6) more broadly to apply to a pedal that operates a saw by pneumatic power.   We generally accord considerable deference to the Secretary's interpretations of his own regulations "so long as the interpretation sensibly conforms to [the regulations'] purpose and wording."   *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 151 (1991) (internal quotation marks omitted); *accord In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 153 (2d Cir. 2010).

The Secretary's interpretation is consistent with the regulation's purpose of promoting safety by protecting against accidental activation of foot-operated woodworking machinery.   That the interpretation is reasonable is supported by ARM's own expert's references to the foot pedal as a treadle.   Accordingly, the Commission did not err in adopting the Secretary's interpretation of § 1910.213(b)(6).

3.      <u>Willfulness of Anchoring and Pedal Violations</u>

ARM challenges the Commission's identification of its violations as "willful." 29 U.S.C. § 666(a).   Willful violations are those "done either with an intentional disregard of, or plain indifference to," the safety regulation, *A. Schonbek & Co. v. Donovan*, 646 F.2d 799, 800 (2d Cir. 1981):   The Commission here found ARM's anchoring and pedal violations willful on a "plain indifference" theory.   Such violations

5

are distinguished by an employer's "heightened awareness of the violative nature of its conduct or the conditions at its workplace." *MJP Constr. Co.*, 19 BNA OSHC 1638, 1647 (No. 98-0502, 2001); *see AJP Constr., Inc. v. Sec'y of Labor*, 357 F.3d at 74 (holding that Secretary may show "plain indifference" through evidence that employer possessed state of mind "such that if it were informed of the standard, it would not care" (internal quotation marks omitted)); *Valdak Corp. v. Occupational Safety & Health Review Comm'n*, 73 F.3d 1466, 1469 (8th Cir. 1996) (holding that employer who "fails to correct a known hazard" commits willful violation).

The Commission's willfulness findings here are supported by substantial evidence. With regard to the § 1910.212(b) violation, CO Donofrio stated that ARM was aware that the saw was not anchored to the ground, and Rivera testified that he complained to management about its lack of anchoring multiple times.[1] In response, Rivera testified that he was told to find employees willing to use the saw and that ARM "need[ed] to make money with it." J.A. 60. The Commission found Joslin's testimony of no reported issues with the saw not to be credible based on his "evasive" demeanor and failure to recall certain relevant facts. S.P.A. 93 n.132; *see United States v. Crandall*, 748 F.3d 476, 483 (2d Cir. 2014); *Lin v. U.S. Dep't of Justice*, 453 F.3d 99,

---

[1] While ARM argues that Rivera only complained about the saw "two or three times," Pet'r's Reply Br. 10, the record suggests he only complained that many times directly to owner Joe Meindl and that he complained numerous times regarding both the saw and the pedal to others, including plant manager Karl Joslin. Indeed, that is how the Commission, which witnessed Rivera's testimony firsthand, interpreted his account. *See Jin Chen v. U.S. Dep't of Justice*, 426 F.3d 104, 113 (2d Cir. 2005) (affording particular deference to credibility determinations where factfinder observed witness testify).

109 (2d Cir. 2006) (noting particular deference given to credibility determination based on factfinder's observation of witness's demeanor).

With regard to the § 1910.213(b)(6) violation, Rivera testified that he complained multiple times to management about the condition of the pedal, which would "just go everywhere." J.A. 58. The employee who lost his hand testified similarly, stating that he complained "[t]wice a week" about the pedal to Rivera, who informed him that he would pass along the complaints to his superiors. J.A. 17. Further, CO Donofrio, whom the Commission explicitly deemed credible, testified that two other employees informed him that they had complained about the pedal's lack of guard or about tripping over it.[2] ARM argues that its violation could not be willful because no one complained specifically about the lack of a foot guard. The cited evidence belies this assertion, and, in any event, was sufficient to provide notice that the unpredictably positioned pedal could be accidentally activated.

The Commission's finding of ARM's plain indifference to these violations is reinforced by other evidence of ARM's general lack of attention to employees' safety. For instance, its safety manual was "generic," S.P.A. 90, and included no machine-specific precautions. Further, as the Commission concluded, "[t]here is no evidence that any owner or member of upper management . . . attempted to become knowledgeable about or implement any of the requirements of the [OSHA] standard[s] or ARM's own safety manual." *Id.* at 91. ARM also failed to provide warning

---

[2] Statements made to the compliance officer are admissible non-hearsay. *See* Fed. R. Evid. 801(d)(2)(D); *MVM Contracting Corp.*, 23 BNA OSHC 1164 (No. 07-1350, 2010), 2010 WL 2944346, at *3 (collecting Commission cases).

7

instructions on its machines in languages other than English, despite evidence that the majority of its employees spoke other languages. Finally, ARM generally failed to provide safety training to its employees. This evidence admitted a reasonable Commission finding that, if ARM were informed of the relevant standards it was violating, it would not have cared. *See AJP Constr., Inc. v. Sec'y of Labor*, 357 F.3d at 74.

In urging otherwise, ARM points to its efforts at promoting safety, such as providing forklift training. Such efforts—not targeted at the violations in question—are insufficient to preclude a Commission finding of indifference to employees' safety. ARM also asserts that it possessed a good faith belief that the saw and pedal were not in violation of §§ 1910.212(b) and 1910.213(b)(6). But the record indicates that ARM made no attempts to respond to complaints regarding the saw and the pedal, such that the Commission's rejection of any good faith defense is thus supported by substantial evidence. *See General Motors Corp.*, 14 BNA OSHC 2064 (Nos. 82-630, 84-781, 84-816, 1991), 1991 WL 41251, at *5 ("The test of good faith for these purposes is an objective one—whether the employer's belief concerning a factual matter, or concerning the interpretation of a rule, was reasonable under the circumstances."). Accordingly, we deny ARM's petition for review as to the citations for willfully violating §§ 1910.212(b) and 1910.213(b)(6).

4.      Violation of General Housekeeping Standard

ARM next challenges its citation for violating 29 C.F.R. § 1910.22(a)(1) and (a)(2), OSHA's general housekeeping standards, which respectively require that "[a]ll

8

places of employment, passageways, storerooms, and service rooms . . . be kept clean and orderly and in a sanitary condition," and that "[t]he floor of every workroom . . . be maintained in a clean, and so far as possible, a dry condition." The parties do not dispute that, as here, the housekeeping standard can be applied to penalize fire and explosion hazards resulting from dust accumulation. *See, e.g.*, *Vitakraft Sunseed, Inc.*, 25 BNA OSHC 1176 (No. 12-1811, 2014) (ALJ), 2014 WL 5794302, at *10. Substantial evidence supported the housekeeping citation, as CO Donofrio testified to and documented multiple instances of excessive combustible wood dust build-up. ARM argues that the build-up was present because it had sent all employees home after the accident without having them clean up the worksite. But the accident occurred at 8:45 AM on a Monday; thus, the Commission could reasonably infer that the build-up was not a product just of that morning's work.

Further, substantial evidence supports the Commission's finding that the dust build-up created a fire and explosion hazard so as to be classified as "serious." 29 U.S.C. § 666(j). Undisputed evidence showed that all five elements of OSHA's "Dust Explosion Pentagon" were simultaneously present during CO Donofrio's first inspection on December 3, 2012: the wood dust was combustible, the machines produced sparks, there was oxygen in the woodshop, significant dust was present on ceiling joists and testimony regarding a leaking dust collector bag established that the dust had dispersed in the air, and the dust was located in a confined space. Indeed, CO Donofrio testified that two employees informed him that there had been at least one previous fire at the facility. The Commission reasonably discounted the testimony of ARM's expert that hazardous

conditions did not exist because he lacked evidence and what observations he did present had been made several days after OSHA's inspection. Accordingly, sufficient evidence existed as a reasonable mind might accept to support the Commission's conclusion that ARM's violation of the housekeeping standard was a serious one. *See Bunge Corp. v. Sec'y of Labor*, 638 F.2d 831, 834 & n.5 (5th Cir. Unit A Mar. 1981) (concluding that evidence supported finding of serious violation of housekeeping standard where "ALJ found that the dust accumulations could contribute to an explosion likely to kill or seriously injure employees").

In urging vacatur, ARM faults the Commission for looking to an industry standard promulgated by the National Fire Protection Association ("NFPA") in the absence of sufficient evidence to support each element of that standard. The argument reflects a fundamental misunderstanding of the role the industry standard played in the agency's determination. The NFPA standard operated "not as a measuring stick," but as "evidence in support" of a finding that the violation of the general housekeeping standard was serious. *American Phoenix, Inc.*, 24 BNA OSHC 2228 (No. 11-2969, 2014) (ALJ), 2014 WL 2058099, at *7. It thus provided "evidence of industry recognition of the hazard," and its use in this manner "is in accord with a long line of general duty clause case law." *Id.* Thus, the Secretary did not need to present evidence as to every technical element of the NFPA standard to prove a serious violation.

5. Violation of Blood-Borne Pathogen Standard

Finally, ARM argues that the Commission erred in affirming the application to it of 29 C.F.R. § 1910.1030, the blood-borne pathogen standard, which requires, *inter alia*,

10

the implementation of a written exposure control plan. Section 1910.1030 applies "to all occupational exposure to blood," *id.* § 1910.1030(a), and defines "occupational exposure" as "reasonably anticipated . . . contact with blood . . . that may result from the performance of an employee's duties," *id.* § 1910.1030(b). ARM contends that the Commission's finding that ARM employees could reasonably anticipate contact with blood from the performance of their duties was without support in the record. We agree.

The Commission rested its finding on CO Mielonen's testimony that OSHA considers it reasonable to expect blood exposure from woodworking injuries and on ARM's injuries log, which showed four laceration-related injuries in 2011 and 2012 that "likely caused bleeding." S.P.A. 118. Mielonen's evidence is simply conclusory and at odds with OSHA's instruction that "occupational exposure" analysis is meant to be fact-based and tied to the "tasks and procedures" associated with particular employees. *See* Occupational Exposure to Bloodborne Pathogens, 56 Fed. Reg. 64,004, 64,102 (Dec. 6, 1991). The injuries evidence is also inadequate, as the Secretary presented no records or testimony that the logged injuries involved blood or that ARM employees were involved in the clean-up of any blood. Moreover, the Secretary failed to put forth evidence that cleaning up blood following an accident fit within the job duties of any employees at the ARM facility, *see, e.g.*, *Borg-Warner Protective Servs. Corp.*, 18 BNA OSHC 1119 (No. 96-0253, 1997) (ALJ), 1997 WL 68085, at *2 (applying blood-borne pathogen standard to security guards at manufacturing plant where first aid was part of written job duties and guards had treated bleeding employees "numerous" times in the

past), or otherwise to show that the job duties of any employees at the ARM facility might result in occupational exposure.

While we do not take issue with the common-sense notion that accidents involving blood might happen at a woodworking facility, on this record, we cannot conclude that substantial evidence supports a finding that ARM employees could reasonably anticipate contact with blood resulting from the performance of their duties. Accordingly, we grant the petition as to this citation, which we now vacate.

6.    Conclusion

We have considered ARM's other arguments and conclude that they are without merit.    Accordingly, the petition for review is DENIED in part and GRANTED in part.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court