23-6151-ag
*Eustis Cable Enterprises, Ltd. v. Su*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of July, two thousand twenty-four.

PRESENT:
> JOSEPH F. BIANCO,
> SARAH A. L. MERRIAM,
> > *Circuit Judges*,
> JANE A. RESTANI,
> > *Judge*.[*]

---

EUSTIS CABLE ENTERPRISES, LTD.,

> *Petitioner*,

v.                                                                     23-6151-ag

JULIE A. SU, ACTING SECRETARY OF LABOR,

> *Respondent*.

---

FOR PETITIONER:                     Pietro J. Lynn, Sean M. Toohey, Lynn, Lynn, Blackman & Manitsky, P.C., Burlington, Vermont.

FOR RESPONDENT:                     Stephanie MacInnes, Attorney; Louise M. Betts, Counsel for Appellate Litigation; Edmund C.

---

[*] Judge Jane A. Restani, of the United States Court of International Trade, sitting by designation.

Baird, Associate Solicitor for Occupational Safety and Health; *for* Seema Nanda, Solicitor of Labor, Washington, District of Columbia.

Petition for review of an order of the Occupational Safety and Health Review Commission (Dennis L. Phillips, *Administrative Law Judge*).

**UPON DUE CONSIDERATION IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED**.

Petitioner Eustis Cable Enterprises, Ltd. ("ECE"), a telecommunications contractor, seeks review of an order of the Occupational Safety and Health Review Commission (the "Commission")[1] affirming two citations issued to ECE following the death of an employee while he was performing aerial line work. ECE seeks review of the ALJ's findings that it provided insufficient training to employees in violation of 29 C.F.R. § 1910.268(c), and insufficient tools and personal protective equipment ("PPE") in violation of 29 C.F.R. § 1910.268(e). More specifically, ECE argues that the ALJ's findings were not supported by substantial evidence and that the ALJ erred in rejecting its defense that the fatality at issue was the result of unpreventable employee misconduct. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to deny ECE's petition.

This Court will "uphold an order of an administrative agency such as the Commission unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 226 (2d Cir. 2002) (quoting 5

---

[1] Because the Commission declined to exercise discretionary review of the decision of the Administrative Law Judge ("ALJ"), the ALJ's decision became a final order of the Commission on December 16, 2022.

U.S.C. § 706(2)(A)). "On review, factual determinations must be upheld—as generally is true on appeal from an administrative agency's adjudicative decision—if supported by substantial evidence on the record considered as a whole." *N.Y. State Elec. & Gas Corp. v. Sec'y of Lab.*, 88 F.3d 98, 104 (2d Cir. 1996) (internal quotation marks and citations omitted). "[S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "We afford particular deference to agency credibility determinations." *Am. Recycling & Mfg. Co. v. Sec'y of Lab.*, 676 F. App'x 65, 68 (2d Cir. 2017) (summary order).

ECE employee Anthony Jennings died on January 13, 2020, while attempting to upright a lasher that had flipped over on the strand between two telecommunications poles during fiber-optic cable installation work in upstate New York.[2] After ECE's three-man crew was unable to

---

[2] As the ALJ explained:

> The purpose of lashing work is to connect the fiberoptic cable to the support strand. During lashing activities, the role of the lineman is to ascend to the telecommunications space, which they do either via the boom of a bucket truck or by climbing utility poles. Typically, lashing work starts when the lineman attaches a 50-to-70-pound lasher or lasher machine to the support strand, along with a rope and/or mule tape (also referred to as "muletape", "mule string," or "mule line") that hangs from the lasher down to the ground. Lashing work is done when the lasher runs along the strand and wraps the strand and fiberoptic cable together with 'lashing wire[.]"

Sp. App'x at 6 (citations and footnote omitted). Stuck lashers are a "frequent" occurrence and "part of typical routine" telecommunications work. Sp. App'x at 14. However, it is only in "rare cases" that lashers cannot be pulled back to the pole with mule tape, and the crew must instead use "layup sticks" or ladders. Supp. App'x at 276. "Layup sticks are a special tool made of fiberglass with a hook on the end. They come in six-foot and three-foot sections, which can be connected and used to reach heights." Sp. App'x at 12 n.21.

right the lasher from their position on the ground using "layup sticks" and "mule tape," Jennings, the foreman, attempted to traverse the strand—a maneuver referred to in the industry as a "midspan excursion"—while using a "climbing belt" as a makeshift bosun's chair. Sp. App'x at 21–22. Jennings was able to fix the lasher, but as he made his way back to the pole, the climbing belt slid up to his chest, resulting in his asphyxiation and death.

Federal regulations require that employers "provide training in the various precautions and safe practices described in this section" unless "the employer can demonstrate that an employee is already trained in the precautions and safe practices required by this section prior to his employment." 29 C.F.R. § 1910.268(c). Although lasher recovery procedures are not mentioned in the OSHA regulations governing telecommunications construction work, ECE does not dispute that the training provision applies to lashing procedures and working at elevated locations.

ECE first contends that it provided on-the-job training as permitted by Section 1910.268(c). However, substantial evidence supports the ALJ's determination that no such on-the-job training occurred. Glenroy Brown, who was the ground hand on Jennings's crew the day of the accident, testified at the hearing before the ALJ that another foreman, Henry Cole, had "shown [him] in the field" how to retrieve a stuck lasher. Sp. App'x at 47. The ALJ found this testimony not credible, because Cole himself testified that he did not provide any such training to Jennings because "he pretty much knew, just like I do, what we were doing." Sp. App'x at 48. Both Cole and Tim Becker, an ECE supervisor, testified that they had neither given nor received formal training on retrieving stuck lashers, nor had they told anyone that midspan excursions were prohibited. ECE did not produce any documentary evidence demonstrating that it had offered such on-the-job training and did not otherwise verify that on-the-job training had occurred. Compliance and Safety

4

Officer Michael Willibey testified that ECE had no confirmation or certification of training "to ensure that the employees, first of all, understood the rules and second of all, followed the rules." Sp. App'x at 40. On this record, substantial evidence supports the ALJ's finding that ECE did not provide the required on-the-job training about how to fix stuck lashers.

ECE further argues that, in any event, it complied with Section 1910.268(c) by relying on Jennings's prior experience working as a lineman in both the United States and Jamaica. *See* 29 C.F.R. § 1910.268(c) ("[W]here the employer can demonstrate that an employee is already trained in the precautions and safe practices required by this section prior to his employment, training need not be provided to that employee in accordance with this section."). In particular, ECE contends that Jennings's fatal use of a toolbelt as a makeshift bosun's chair to span the line was contrary to his "long history of working in Jamaica in the telecommunications construction industry around utility poles." Reply Br. at 2.

The record evidence does not establish that anyone at ECE verified Jennings's prior training or that ECE had procedures to do so. ECE offered no documentation or records confirming that Jennings had been trained prior to his employment. ECE Vice President Andy Bauer testified that he did not know how long Jennings worked as a lineman in the United States, or where, when, and for how long Jennings attended lineman school in Jamaica, and what training he understood to be included in that program.[3] Although Becker testified that he had observed Jennings in his prior employment before hiring him at ECE, he also testified that ECE did not have

---

[3] Brown told Officer Willibey that "[g]oing out on the strand" was never taught or trained at ECE as a method for retrieving stuck lashers, and he had only observed a midspan excursion one time in his career while working in Jamaica. Supp. App'x at 276.

any procedures to certify prior training or to ensure that employees with prior experience understood the proper procedures to retrieve a stuck lasher before going out to the field. Accordingly, the ALJ did not err in finding that ECE did not demonstrate that Jennings was "already trained in the precautions and safe practices . . . prior to his employment." 29 C.F.R. § 1910.268(c).

Substantial evidence also supports the ALJ's determination that the crew did not have sufficient tools and PPE at their worksite to safely retrieve a stuck lasher. Section 1910.268(e) requires that employers must provide "personal protective equipment, protective devices and special tools needed for the work of employees." When assessing compliance with a "performance standard," we look to "what is reasonable under the circumstances, including the knowledge of reasonable persons familiar with the industry." *Jacobs Field Servs., N. Am.*, 2019 CCH OSHD ¶ 33702, 2018 WL 7080228, at *5 (No. 17-1402, 2018) (ALJ) (internal quotation marks and citations omitted).

On the day of the accident, the crew first attempted to use the layup sticks available on their truck to fix the flipped lasher. But they only had three sticks which, when combined, were not long enough to reach the lasher. The crew's truck was also not equipped with a ladder, and the crew attempted and failed to gain extra height by climbing a tree. The ALJ determined that, based on Becker's testimony about malfunctioning lashers and Brown's testimony about what occurred on the day of the incident, it would have been feasible for Jennings's crew to safely reach the stuck lasher on the day of the incident with the use of a ladder or "the normal complement of

6

four layup sticks," none of which Jennings's team had with them at the worksite.[4] Sp. App'x at 57. ECE does not contest this determination. It is also undisputed that layup sticks and ladders are "special tools" covered by Section 1910.268(e).

ECE argues that these tools *were available* because the employees could have requested a ladder or additional layup sticks from its headquarters, located about 25 miles away from the worksite. Both Officer Willibey and Bauer testified that the crew could have called headquarters for a ladder to be delivered to the worksite. The ALJ rejected this argument, finding that making special tools and PPE available at headquarters "on request" does not constitute compliance with Section 1910.268(e). Sp. App'x at 57 (citing *Clarence M. Jones*, 1983–84 CCH OSHD ¶ 26516, 1983 WL 23870, at *3 (No. 77-3676, 1983) ("We therefore reject [the] contention that making such protection available 'on request' constitutes compliance with these standards.") and *United Geophysical Corp.*, 1981 CCH OSHD ¶ 25579, 1981 WL 18807, at *7 n.13 (No. 78-6265, 1981) ("[P]rotective equipment kept at a central location as much as 30 miles from the jobsite . . . cannot be considered available for use by the employees at the site.")). We agree. Substantial evidence supports the ALJ's determination that "lashers frequently become disabled, entangled, stuck or otherwise require[e] service at a working altitude, including in the space between two poles." Sp. App'x at 14 (internal citation and quotation marks omitted). Under these circumstances, keeping a normal complement of layup sticks or a ladder on the work truck are "reasonable precautions against hazards generally known in the industry." *Jacobs Field Servs., N. Am.*, 2018 WL 7080228, at *5.

---

[4] Although the primary mode of fixing a stuck lasher is to use mule tape, the crew was unable to fix the lasher with mule tape on the day of the incident.

Finally, the ALJ properly rejected ECE's affirmative defense that the fatality was the result of unforeseeable employee misconduct. To be entitled to the affirmative defense, "an employer must prove that (1) it established work rules to prevent the violation; (2) these rules were adequately communicated to the employees; (3) it took steps to discover violations; and (4) it effectively enforced the rules when infractions were discovered." *D.A. Collins Constr. Co. v. Sec'y of Lab.*, 117 F.3d 691, 695 (2d Cir. 1997) (footnote omitted). The employer bears the burden of establishing the affirmative defense "after the Secretary has made out a *prima facie* case of a violation." *Id*. With respect to Section 1910.268(c), the ALJ determined that ECE did not make the requisite showing that "the person in charge of ensuring the Crew had [the required] training, failed to do so." Sp. App'x at 68. The ALJ further found that ECE did not establish the defense with respect to Section 1910.268(e), because "[t]o the extent ECE provided any instructions on the proper tools and equipment to use to address the circumstances the Crew encountered on January 13, 2020, it was both too general and left too much discretion to employees to be effective." Sp. App'x at 69.

ECE generally argues that it is entitled to the defense as to both violations because Jennings "failed to follow the ECE training or to properly use the tools that ECE provided." Pet. Br. at 14. ECE does not assert that any policies or procedures were in place to prevent foremen like Jennings from going into the field without adequate training or that it reasonably relied on supervisors and managers to follow procedures to confirm that Jennings was properly trained. Instead, it reiterates the contention that its supervisors actually and justifiably relied on Jennings's prior training and experience. As discussed above, substantial evidence supports the ALJ's findings that ECE did not verify, nor have any procedures to verify, that Jennings was properly trained. *See Am. Sterilizer*

*Co.*, 1995–97 CCH OSHD ¶ 31451, 1997 WL 694094, at *5–6 (No. 91-2494, 1997). Without such procedures in place to prevent the failure-to-train violation, this theory of the affirmative defense fails.

ECE also contends that its rule that climbing belts "be used only for [their] intended purpose" would have prevented the failure-to-equip violation, and that this rule was communicated to employees, including Jennings, at their orientation. Reply Br. at 7. ECE does not, however, allege or establish that it took steps to discover any such improper use of PPE, or enforced the rule when it was violated. In short, the ALJ properly denied the defense on the grounds that an employer who does not "implement[] and enforc[e] an effective work rule" to address workplace hazards "cannot shift to its employees the responsibility for assuring safe working procedures." Sp. App'x at 69 (quoting *Pride Oil Well Serv.*, 1992 CCH OSHD ¶ 29807, 1992 WL 215112, at *8 (No. 87-692, 1992)).

*                    *                    *

We have considered the petitioner's remaining arguments and find them to be without merit. Accordingly, we **DENY** the petition for review.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court