Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 4, 2003          Decided February 13, 2004

No. 03-1073

AJP CONSTRUCTION, INC.,
PETITIONER

v.

SECRETARY OF LABOR,
RESPONDENT

On Petition for Review of an Order of the
Occupational Safety and Health Review Commission

*Joseph P. Paranac Jr.* argued the cause and filed the brief for petitioner.

*John Shortall*, Attorney, U.S. Department of Labor, argued the cause for respondent. With him on the brief were *Joseph M. Woodward*, Associate Solicitor, and *Bruce F. Justh*, Counsel.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: Edwards, Sentelle, and Tatel, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* Tatel.

Tatel, *Circuit Judge*: Petitioner, a construction company, challenges the Occupational Safety and Health Review Commission's affirmance of several citations for fall-protection violations issued after one of the company's employees fell to his death. Because the Commission's decision is well supported by substantial evidence and because the company had fair notice of the applicable regulations, we deny the petition.

**I.**

Adopted "to assure so far as possible . . . safe and healthful working conditions," 29 U.S.C. § 651(b) (2000), the Occupational Safety and Health Act requires employers to "comply with occupational safety and health standards promulgated under [the] Act," *id.* § 654(a)(2) (2000). The Occupational Safety and Health Administration (OSHA) regularly inspects workplaces and issues citations for violations of its safety standards. OSHA classifies citations as not serious, serious, or willful; penalties increase with the severity of the violation. *Id.* § 666(a)-(c) (2000). Employers may challenge citations before the Occupational Safety and Health Review Commission. To establish a violation, the Secretary of Labor has the burden of proving: "(a) the applicability of the cited standard, (b) the employer's noncompliance with the standard's terms, (c) employee access to the violative conditions, and (d) the employer's actual or constructive knowledge of the violation (i.e., the employer either knew, or with the exercise of reasonable diligence could have known, of the violative conditions)." *Sec'y of Labor v. AJP Constr. Inc.*, 19 O.S.H. Cas. (BNA) 2204 (2003), *available at* 2003 WL 145418, at *2; *accord Am. Wrecking Corp. v. Sec'y of Labor*, 351 F.3d 1254, 1261 (D.C. Cir. 2003).

Petitioner AJP Construction, Inc. (AJP) served as the concrete subcontractor for the construction of a high-rise residential building in Hoboken, New Jersey. Responding to a hot-line call reporting fall-related accidents and other safety hazards, OSHA began an inspection of the construction site in

the fall of 2000. While OSHA's investigation was pending, AJP employee James Sherengo fell to his death while working at the site. At the time of the fatal accident, Sherengo and two other AJP employees were working on a seventh-floor "outrigger scaffold." OSHA regulations define an outrigger scaffold as "a supported scaffold consisting of a platform resting on outrigger beams (thrustouts) projecting beyond the wall or face of the building or structure, the inboard ends of which are secured inside the building or structure." 29 C.F.R. § 1926.450(b) (2003). The accident occurred when a crane hit construction materials hanging over the edge of the twelfth floor, toppling them onto the seventh-floor scaffold and causing Sherengo's deadly fall.

After the fatal accident, OSHA cited AJP for several violations relating to Sherengo's death. First, and central to this case, OSHA found that AJP knowingly failed to use personal fall-arrest or guardrail systems to protect the employees on the outrigger scaffold in willful violation of 29 C.F.R. § 1926.451(g)(1)(vii) (2003). Specifically, OSHA found that the outrigger scaffold had no guardrails and that Sherengo wore no fall-protection equipment. Although the other two employees working on the outrigger scaffold wore harnesses, the harnesses were entirely unsecured. OSHA also found that the large stack of construction material that fell from the twelfth floor was neither secured nor placed away from the edge of the building in violation of 29 C.F.R. § 1926.451(h)(1); that the scaffold was not "erected . . . under the supervision and direction of a competent person qualified in scaffold erection" in violation of 29 C.F.R. § 1926.451(f)(7); that the scaffold had not been constructed in accordance with a professional engineer's design in violation of 29 C.F.R. § 1926.452(i)(8) (2003); that the employees working on the scaffold had never been "trained by a person qualified . . . to recognize the hazards associated with the type of scaffold being used and to understand the procedures to control or minimize those hazards" in violation of 29 C.F.R. § 1926.454(a) (2003); and finally, that AJP had failed to protect employees exposed to the elevated unguarded edge of the building itself in violation of 29 C.F.R. § 1926.501(b)(1)

(2003). In addition, OSHA cited the company for several fall-protection violations unrelated to the fatal accident.

AJP contested all of the citations before the Commission. Pursuant to 29 U.S.C. § 661(j) (2000), the Commission appointed an administrative law judge who held a five-day evidentiary hearing. With respect to the willful violation of 29 C.F.R. § 1926.451(g)(1)(vii), the company did not dispute that the outrigger scaffold lacked guardrails or that the three employees wore insufficient fall protection. Instead, AJP argued that it lacked the level of knowledge required for a violation. It also challenged the willful classification. Rejecting AJP's arguments, the ALJ affirmed the willful violation as well as a majority of the other citations. AJP filed a petition for review with the Commission. When the Commission declined to review the case, the ALJ's decision became the Commission's final order. *See* 29 U.S.C. § 661(j).

In its petition for review in this court, AJP challenges all of the Commission's adverse determinations, arguing that they are unsupported by substantial evidence. The company also argues that the scaffolding regulations fail to provide the fair notice required by the Fifth Amendment's Due Process Clause. *See Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1328-29 (D.C. Cir. 1995) (recognizing that agency regulations must provide fair notice before penalties are imposed).

## II.

We will affirm the Commission's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); *see also Am. Wrecking*, 351 F.3d at 1261. Commission findings of fact are conclusive "if supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 660(a) (2000). Under that standard, we uphold Commission findings so long as there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Whirlpool Corp. v. OSHRC*, 645 F.2d 1096, 1101 (D.C. Cir. 1981) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)) (internal quotation marks omitted). Moreover, "[t]he ques-

tion we must answer ... is not whether record evidence supports [petitioner's] version of events, but whether it supports [the agency's]." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 368 (D.C. Cir.), *cert. denied*, 124 S. Ct. 386 (2003). We "must accept the ALJ's credibility determinations ... unless they are patently unsupportable." *Tasty Baking Co. v. NLRB*, 254 F.3d 114, 124 (D.C. Cir. 2001).

We begin with AJP's primary challenge—that the ALJ erred in finding that the company willfully violated 29 C.F.R. § 1926.451(g)(1)(vii)'s requirement that employers use guardrails or personal fall-protection equipment to protect employees on outrigger scaffolds. Repeating arguments soundly rejected by the ALJ and urging us to re-weigh evidence and to substitute our judgment for the ALJ's, AJP contends both that it lacked the level of knowledge required for the violation and that the ALJ had no basis for finding that the violation was willful. Applying our deferential standard of review, we have little trouble concluding that substantial evidence in the record supports the ALJ's findings on both issues.

In finding that AJP had the requisite knowledge, the ALJ relied largely on the testimony of general contractor employee Keith Healy that he had repeatedly informed AJP both verbally and through written safety memoranda that the company's employees were working on platforms without adequate fall protection. *AJP Constr.*, 19 O.S.H. Cas. (BNA) 2204, 2003 WL 145418, at *12. AJP does not challenge Healy's testimony that he warned the company about safety violations. Instead, the company argues that it lacked actual knowledge that the employees working on the outrigger scaffold were wearing insufficient fall protection at the time of the accident that caused Sherengo's death. In support, AJP points to testimony by its own employees that the men working on the scaffold had been provided with fall-protection equipment, that they had been instructed to use it, and that, except for the day of the fatal accident, they had always followed those instructions.

AJP's argument suffers from several flaws. To begin with, even if the company lacked actual knowledge of the unlawful

condition, Healy's testimony is more than sufficient to support a finding that AJP could have known of the unlawful condition through the exercise of reasonable diligence—all the Act requires. *See Am. Wrecking Corp.*, 351 F.3d at 1261. Moreover, the ALJ expressly credited Healy's testimony and safety memos over evidence that AJP's employees usually wore fall protection, relying on Healy's "opportunity and capacity to observe, the consistency of his testimony, his lack of bias, and the overall reasonableness of his testimony." *AJP Constr.*, 19 O.S.H. Cas. (BNA) 2204, 2003 WL 145418, at *12. Reinforcing the ALJ's finding that the company had the requisite knowledge, the OSHA inspector testified that the two surviving employees told him that when they questioned their foreman about using fall-protection equipment on the outrigger scaffold, the foreman warned them simply not to "go out too far" and to "[b]e careful." *See* Tr. 214 (6/25/2002), *reprinted in* App. 87. The ALJ found the inspector more credible than AJP's witnesses, relying on the inspector's demeanor, his capacity to observe, and the fact that "his observations and conclusions were consistent with the other evidence in the record." *AJP Constr.*, 19 O.S.H. Cas. (BNA) 2204, 2003 WL 145418, at *2 n.4. AJP offers no basis for questioning the ALJ's well-supported credibility determinations, particularly given the high level of deference to which they are entitled. *See, e.g.*, *Tasty Baking*, 254 F.3d at 124.

With respect to the willfulness finding, our case law establishes that "a willful violation of the Act constitutes an act done voluntarily with either an intentional disregard of, or plain indifference to, the Act's requirements." *A.J. McNulty & Co. v. Sec'y of Labor*, 283 F.3d 328, 337-38 (D.C. Cir. 2002) (quoting cases) (internal quotation marks omitted). In finding AJP plainly indifferent to OSHA's fall-protection requirements, the ALJ relied on the company's disregard of Healy's warnings, its failure to make any effort to address the safety problems, and OSHA's issuance of fall-protection citations against AJP-related enterprises in the past. *See AJP Constr.*, 19 O.S.H. Cas. (BNA) 2204, 2003 WL 145418, at *13.

Challenging the ALJ's conclusion, AJP again observes that the record contains no evidence that the company had actual

knowledge of the unlawful condition. Neither of the two cases on which AJP relies, however, indicates that direct proof is required to find willfulness. Both cases make clear that to sustain a willful violation, "[t]he Secretary must show that the employer was actually aware, at the time of the violative act, that the act was unlawful, *or that it possessed a state of mind such that if it were informed of the standard, it would not care.*" *Sec'y of Labor v. Propellex Corp.*, 18 O.S.H. Cas. (BNA) 1677, 1684 (1999), *available at* 1999 WL 183564, at *8 (emphasis added); *see also Sec'y of Labor v. Midwest Generation, LLC*, 19 O.S.H. Cas. (BNA) 1520 (2001), *available at* 2001 WL 799559, at *11. As the First Circuit has explained "an act may be 'willful' if the offender shows 'indifference' to the rules; he need not be consciously aware that the conduct is forbidden at the time he performs it, but his state of mind must be such that, if he were informed of the rule, he would not care." *Brock v. Morello Bros. Constr., Inc.*, 809 F.2d 161, 164 (1st Cir. 1987).

The Commission has found willfulness "where an employer has been previously cited for violations of the standards in question, is aware of the requirements of the standards, and is on notice that violative conditions exist." *Propellex Corp.*, 18 O.S.H. Cas. (BNA) at 1684, 1999 WL 183564, at *8. The unrefuted evidence in this case tracks that standard precisely. The ALJ found that AJP knew of the fall-protection requirements from previous OSHA citations and that Healy's safety memos put AJP on notice of the fall-protection deficiencies at the work site. Moreover, six previous OSHA compliance inspections had reported rampant fall-protection violations at the site. This evidence amply supports the ALJ's finding that AJP possessed the state of mind necessary for a willful violation.

AJP also challenges the willfulness finding on the ground that the ALJ erred in concluding that the company had failed to address fall-protection deficiencies at the site. In support, the company again relies on testimony that employees working on the outrigger scaffold usually wore fall protection. As we noted above, however, the ALJ discredited that testimony. AJP also points to its fall-protection plan, evidence of fall-

protection discussions at safety meetings, and the OSHA inspector's initial report, which noted that AJP was planning to adopt an extensive fall-protection plan. According to AJP, such evidence establishes that the company had stringent fall-protection measures in place and belies the ALJ's plain indifference finding. We disagree.

Read in its entirety, the record easily supports the ALJ's conclusion that, far from adopting stringent fall-protection measures, AJP's efforts were incomplete, ineffective, and unenforced. As to the fall-protection plan, the ALJ found—and AJP does not dispute—that the four-page handwritten plan was prepared months after work had started, was disseminated to neither supervisors nor workers, made no mention of OSHA requirements, and did not even address work performed on scaffolds. Other than a fifteen-minute talk to the carpenters, the record contains no evidence of any discussion of fall protection, and AJP points to no instance in which it actually enforced fall-protection requirements. Indeed, even AJP foremen charged with fall-protection training and enforcement were seen violating OSHA standards. *See Nat'l Realty & Constr. Co. v. OSHRC*, 489 F.2d 1257, 1267 n.38 (D.C. Cir. 1973) ("[T]he fact that a foreman would feel free to breach a company safety policy is strong evidence that implementation of the policy was lax."). Corroborating this evidence, an OSHA video of the AJP work site shows employees working on scaffolds without fall-protection equipment. Finally, although it is true that the OSHA inspector initially reported that AJP was attempting to establish an effective fall-protection plan, nothing in the record suggests that the company ever implemented any adequate safety measures.

The sufficiency of the evidence in this case becomes plain by contrasting it with our recent decision in *American Wrecking*. Reversing a willfulness finding, we concluded there that the ALJ had not only failed to make a coherent credibility determination and ignored contrary evidence, but also found that the cited employer possessed a willful state of mind because the unsafe condition was "so obvious" that the employer should have known of the hazard. 351 F.3d at 1264. As we explained, the ALJ in *American Wrecking* ignored the

well-established distinction between willful and lesser violations: although constructive knowledge or mere negligence suffices for a non-willful violation, willfulness requires conscious disregard or plain indifference to the Act's requirements. *Id.* at 1264-65. In contrast to *American Wrecking*, the ALJ here found that AJP possessed a willful state of mind not because the company *should have known* of the fall-protection hazards, but because prior citations and warnings coupled with AJP's failure to act demonstrated that it was aware of the unsafe conditions and yet chose not to correct them. Indeed, our cases clearly hold that evidence of an employer's failure to take corrective measures despite prior warnings and citations for similar violations provides a sufficient basis for sustaining a willfulness finding. *See A.J. McNulty*, 283 F.3d at 338; *Donovan v. Williams Enters. Inc.*, 744 F.2d 170, 179 (D.C. Cir. 1984).

## III

This brings us to AJP's claim that OSHA provided constitutionally inadequate notice that the fall-protection regulations applied to its outrigger scaffold. Although we defer to agencies' reasonable interpretations of their own regulations, "the due process clause prevents that deference from validating the application of a regulation that fails to give fair warning of the conduct it prohibits or requires." *Gates & Fox Co. v. OSHRC*, 790 F.2d 154, 156 (D.C. Cir. 1986). As we explained in *General Electric*:

> In such cases, we must ask whether the regulated party received, or should have received, notice of the agency's interpretation in the most obvious way of all: by reading the regulations. If, by reviewing the regulations and other public statements issued by the agency, a regulated party acting in good faith would be able to identify, with ascertainable certainty, the standards with which the agency expects parties to conform, then the agency has fairly notified a petitioner of the agency's interpretation.

53 F.3d at 1329 (citation and internal quotation marks omitted).

AJP argues that the scaffolding regulations are "broad and exceedingly vague," and that as a result it had no notice that its work platform would be considered an outrigger scaffold. OSHA regulations define a "scaffold" as "any temporary elevated platform (supported or suspended) and its supporting structure (including points of anchorage), used for supporting employees or materials or both." 29 C.F.R. § 1926.450(b). As noted earlier, an "outrigger scaffold" is "a supported scaffold consisting of a platform resting on outrigger beams (thrustouts) projecting beyond the wall or face of the building or structure, the inboard ends of which are secured inside the building or structure." *Id.* The regulations even include an illustration of an outrigger scaffold "intended to provide visual guidance to assist the user in complying with the requirements." *Id.* pt. 1926, subpt. L, app. E (2003).

Given the specificity of the outrigger definition and the clarity of the illustration, AJP's claim that it had no way of knowing that its work platform would qualify as an outrigger scaffold is utterly unconvincing. Although it is true, as AJP points out, that OSHA's scaffolding standard describes more than twenty-six different types of scaffolds, AJP never explains why it could not have known that the platform at issue fit the definition of an outrigger scaffold simply by "reading the regulations." *Gen. Elec.*, 53 F.3d at 1329. At oral argument, moreover, AJP's counsel conceded that the platform matched the illustration attached to the regulations.

AJP also claims that the scaffolding regulations are impermissibly vague because they could apply to temporary work decks that the company erects on each floor in order to pour concrete. Perhaps so, but OSHA did not sanction AJP for violations on its work decks. It sanctioned the company for safety violations on its outrigger scaffold, to which the regulation clearly applies. Even if the definitions could be viewed as overly broad, that would not support AJP's baseless argument that they failed to provide fair notice with respect to the

platform at issue in this case. *Cf. Robinson v. Cheney*, 876 F.2d 152, 163 (D.C. Cir. 1989) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." (quoting *Parker v. Levy*, 417 U.S. 733, 756 (1974)) (internal quotation marks omitted)).

## IV

Having thoroughly reviewed the record, we find each of the ALJ's other findings well supported by substantial evidence in the record as a whole. The petition for review is denied.

*So ordered.*