**SUMMIT CONTRACTORS,
INC., Petitioner**

v.

**SECRETARY OF LABOR and Occupational Safety and Health Review
Commission, Respondents.**

No. 10–1329.

United States Court of Appeals,
District of Columbia Circuit.

Dec. 14, 2011.

James McCord Wilson, Esquire, Rader & Campbell, LLP, Dallas, TX, for Petitioner.

Charles F. James, Gary K. Stearman, Joseph M. Woodward, Associate Solicitor, U.S. Department of Labor (Labr) Office of the Solicitor, Washington, DC, for Respondents.

Before: SENTELLE, Chief Judge, and HENDERSON and GARLAND, Circuit Judges.

### JUDGMENT

PER CURIAM.

This appeal from an order of the Occupational Safety and Health Review Commission was presented to the court, and briefed and argued by counsel. The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. See D.C.CIR. R. 36(d). For the following reasons, it is

**ORDERED** and **ADJUDGED** that the petition for review be denied.

On May 5, 2005, an inspector from the Occupational Safety and Health Administration (OSHA) issued a citation to Summit Contractors, Inc., because a portable generator and a "spider box"—a receptacle with plugs for electrical tools—on one of its job sites lacked ground fault circuit interrupters (GFCI), in violation of 29 C.F.R. § 1926.404(b)(1)(ii). Summit was the general contractor on the site; its supervisor had ordered the equipment from a rental company, but neither of Summit's two employees at the site was exposed to the hazard. Summit contested the citation before an administrative law judge (ALJ), who affirmed the citation, as did the Occupational Safety and Health Review Commission (OSHRC). See Summit Contractors, Inc., 23 OSHC (BNA) 1196, 2010 WL 3341872 (No. 05–0839, 2010). The citation was affirmed on the ground that Summit was a "controlling employer" (because of its authority over the site in general and the electrical equipment in particular) and a "creating employer" (because it obtained the violative equipment). We find each of Summit's three challenges to OSHRC's order to be without merit.

Summit first raises a procedural challenge to OSHA's Multi–Employer Citation Policy (OSHA Instruction CPL 2–0.124), which provides that an employer may under specified circumstances be cited for violations even if none of its own employees were exposed to the hazard. According to Summit, OSHA violated § 553 of the Administrative Procedure Act (APA) by not subjecting the policy to notice and comment rulemaking. There are two problems with this argument. First, an agency document that "merely represents an agency position with respect to how it will ... enforce ... the governing legal norm" is exempt from the APA's notice and comment requirements as a general statement of policy. Syncor Int'l Corp. v. Shalala, 127 F.3d 90, 94 (D.C.Cir.1997); see 5 U.S.C. § 553(b)(3)(A). The Citation Policy is such a document: it simply provides guidance to OSHA inspectors on when it may be appropriate to cite a particular employer. Cf. Brock v. Cathedral Bluffs Shale Oil Co., 796 F.2d 533, 537 (D.C.Cir.1986). Second, neither the ALJ nor the Commission relied on the Citation Policy in imposing liability on Summit; instead, they rested on longstanding Commission precedent holding general contractors liable in similar circumstances. See Summit Contractors, Inc., 23 OSHC (BNA) at *3–*7; SECRETARY OF LABOR v. SUMMIT CONTRACTORS, INC., 2006 WL 6619948, at *4 (No. 05–0839, 2006) (ALJ). OSHA was within its authority to impose multi-employer liability through adjudication before the Commission rather than through rulemaking. NLRB v. Bell Aerospace Co., 416 U.S. 267,

294–95, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974); *see Martin v. OSHRC,* 499 U.S. 144, 154–55, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991).

Summit next contends that multi-employer liability violates § 4(b)(4) of the OSH Act, which provides that the Act shall not be "construed to ... affect ... the common law ... duties, or liabilities of employers." 29 U.S.C. § 653(b)(4). According to Summit, to avoid multi-employer liability, general contractors must enforce their subcontractors' compliance with OSHA standards. This, Summit contends, may give rise to a common law duty of care as to those subcontractors' employees, a duty that will increase general contractors' liability. But this argument is no defense against the citation here: such liability would arise only from a court's (hypothetical) later action under state law—not from the OSH Act itself, which is all that § 4(b)(4) addresses. *See United Steelworkers of Am. v. Marshall,* 647 F.2d 1189, 1235–36 (D.C.Cir.1980).

Finally, Summit contends that the Secretary failed to prove Summit's knowledge of the violation. Under the OSH Act, this requirement is satisfied if the employer had either actual or constructive knowledge of the violation: "i.e., the employer either knew, or with the exercise of reasonable diligence could have known, of the violative conditions," *AJP Constr., Inc. v. Sec'y of Labor,* 357 F.3d 70, 71 (D.C.Cir. 2004), and a supervisor's knowledge is imputed to the company, *A.E. Staley Mfg. Co. v. Sec'y of Labor,* 295 F.3d 1341, 1347–48 (D.C.Cir.2002). Substantial evidence supports the Commission's finding that Summit could have known of the violative condition with the exercise of reasonable diligence. Summit's agreement with its subcontractor stated that Summit "may provide ... temporary electrical ... services," and that if it did, the subcontractor "shall make use of [the service] as provid-

ed." *Summit Contractors, Inc.,* 23 OSHC (BNA) at *1. In fact, Summit's supervisor did order the electrical equipment in question but neither requested GFCI nor checked the equipment when it arrived—even though doing so would have taken only a few seconds and required no specialized expertise. *Id.* at *10–*11. Although Summit suggests that its supervisor reasonably relied on his experience that all spider boxes came with GFCI, the sole record evidence shows that only six of the rental company's eighteen boxes had GFCI.

Given our rejection of Summit's challenges, we need not address the Secretary's contention that collateral estoppel bars Summit from raising them.

The Clerk is directed to withhold the issuance of the mandate herein until seven days after the disposition of any timely petition for rehearing. *See* Fed. R.App. P. 41(b); D.C.Cir. R. 41(a)(1).