[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14595
Non-Argument Calendar
_____

Agency No. 18-0643

INTERNATIONAL FIRE PROTECTION, INC.,

Petitioner,

versus

SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,

Respondent.

_____

Petition for Review of a Decision of the
Occupational Safety and Health Review Commission
_____

(September 8, 2020)

Before ROSENBAUM, JILL PRYOR and BLACK, Circuit Judges.

PER CURIAM:

This case arises from an accident that occurred at the James F. Crist Generating Plant (Plant Crist), on October 2, 2017, in Pensacola, Florida. International Fire Protection, Inc. (IFP) was subsequently cited by the United States Department of Labor's Occupational Safety and Health Administration (OSHA) for an alleged "serious" violation of the Occupational Safety and Health Act of 1970 (the Act), for violating the scaffolding requirements of 29 C.F.R. § 1926.451(b)(2), with a proposed penalty of $12,934.00.  After IFP contested the citation, the Secretary of Labor filed a formal complaint with the Occupational Safety and Health Review Commission (Commission) charging IFP with violating the Act and seeking an order affirming the citation.  After a bench trial, an administrative law judge (ALJ) concluded the Secretary established all elements necessary to prove a serious violation and affirmed the citation and penalty.  The Commission declined IFP's Petition for Discretionary Review, and IFP now petitions this Court for review.  IFP contends the ALJ unreasonably concluded that one wood board resting on the interior of a pre-existing multi-story structure constitutes "scaffolding" within the meaning of 29 C.F.R. § 1926.450(b) and a "scaffold platform" within the meaning of 29 C.F.R. § 1926.451(b)(2).  After review, we deny the petition.

2

## I.  BACKGROUND

Southern Power hired IFP to work on the sprinkler system in a cooling tower at Plant Crist to replace hangers that supported the sprinkler piping with new stainless-steel hangers, replace all sprinkler nozzles, and readjust the elevation of the sprinkler piping.  On October 2, 2017, four employees from IFP—Bennett Stoker, Sam Gilchrist, Jonathan Andrew Sullivan, and Rodrecequz Magwood— were working inside a cooling tower at Plant Crist.  The fire sprinkler work was located at the top of the cooling tower, meaning that IFP employees were working approximately 40-50 feet above the ground.

The interior of the cooling tower consists entirely of wood beams installed previously by Plant Crist or its other vendor.  The wood beams crisscross in a dense pattern of vertical, diagonal, and horizontal wood beams of various sizes and dimensions throughout the entire interior of the tower from ground level to about 50 feet high off the ground.

IFP employees were working to re-hang both the pilot lines and branch pipes in the sprinkler system inside the cooling tower.  IFP employees were "tied-off"[1] the entire time they worked inside the cooling tower.  While IFP employees were performing the re-hanging work, they could either stand on the set of structural

---

[1]  IFP employees were protected from fall hazards by the use of personal fall arrest systems.  Employees were "tied off" with two points of contact with lanyards at some points and one point of contact with a lanyard at other points.

3

joists that are part of the cooling tower located immediately below the pipes, or they could stand on one of the boards that IFP Superintendent McKeough had purchased for the jobsite. Each board was approximately 2-inches thick by 10-inches wide by 8-feet long and was long enough to stretch across three sets of joists inside the cooling tower.

IFP employees predominantly performed their work inside the cooling tower while standing on the set of joists and only used the boards to move from one set of joists to another set of joists. IFP employees could pick up the boards and move them freely throughout the work area. The boards were a matter of convenience and were used while ensuring that employees were always tied off with two points of contact with lanyards at some points and one point of contact with a lanyard at other points.

Stoker used the boards as both a working platform and a walking surface. Stoker performed his hanging work either standing on the joist underneath the branch lines or standing on a board. Between 11:30 a.m. and noon on October 2, 2017, Stoker was standing on one of the boards inside the cooling tower. Stoker had just finished installing a hanger and as he turned to speak to Sullivan, the board twisted underneath him, and he fell 5 to 6 feet. Stoker tried to grab onto anything he could to stop his fall, and in the process, his left arm hit the joist immediately underneath him while he fell. Stoker was wearing a personal fall

4

arrest system at the time of his fall, which stopped his fall within 5 to 6 feet, although Stoker seriously injured his arm during the fall. The board that Stoker had been standing on fell with him but came to a stop on the set of joists one level below where Stoker and the other IFP employees had been working.

Following the accident, an OSHA Compliance Safety and Health Officer conducted an inspection at the worksite on October 4, 2017. As a result of its inspection, OSHA issued a citation to IFP on March 19, 2018, alleging a serious violation of the scaffolding requirements of 29 C.F.R. § 1926.451(b)(2). After a bench trial, an ALJ affirmed the citation and assessed a civil penalty of $12,934.00.

## II. DISCUSSION

As an initial matter, IFP does not dispute the ALJ's factual findings. Rather, it confines its argument to the legal issue of whether the Secretary established a prima facie violation of an OSHA standard using the undisputed facts. To establish a prima facie violation of an OSHA standard, the Secretary must show that: (1) the standard applied; (2) it was violated; (3) an employee was exposed to the hazard that was created; and (4) the employer "knowingly disregarded" OSHA's requirements. *ComTran Grp., Inc. v. U.S. Dep't of Labor*, 722 F.3d 1304, 1307 (11th Cir. 2013) (quotations omitted). Specifically, IFP contends the ALJ's Final Decision and Order should be reversed because the first factor of the prima facie case was not met. IFP asserts a singular wood board does not meet the legal

definition of a scaffold or supported scaffold under any of the relevant regulations. IFP asserts the singular wood board lacked the "supporting structure" and "points of anchorage" that are essential for scaffolding. Thus, the scaffolding regulations should not apply.

"Scaffold" is defined as "any temporary elevated platform (supported or suspended) and its supporting structure (including points of anchorage), used for supporting employees or materials or both." 29 C.F.R. § 1926.450(b). "Supported scaffold" is defined as "one or more platforms supported by outrigger beams, brackets, poles, legs, uprights, posts, frames, or similar rigid support." *Id.* "Platform" is defined as "a work surface elevated above lower levels." *Id.* IFP was cited for violating 29 C.F.R. § 1926.451(b)(2), which states that, "[e]xcept as provided in paragraphs (b)(2)(i) and (b)(2)(ii) of this section,[2] each scaffold platform and walkway shall be at least 18 inches (46 cm) wide."

The ALJ concluded the wooden board and pre-existing structural interior of the Plant Crist cooling tower satisfied the definition of scaffold, even though the supporting structure and points of anchorage were not constructed by IFP. The

---

[2] The listed exceptions are for ladder jack scaffolds, top plate bracket scaffolds, roof bracket scaffolds, pump jack scaffolds, and boatswains' chairs. 29 C.F.R. § 1926.451(b)(2)(i). There is also an exception for "[w]here scaffolds must be used in areas that the employer can demonstrate are so narrow that platforms and walkways cannot be at least 18 inches (46 cm) wide." *Id.* § 1926.451(b)(2)(ii). IFP does not appeal the ALJ's determination that it did not meet the burden of proving an exception to the width requirements applied.

ALJ reasoned:

> Here, the wood plank was a platform within the meaning of the standard since it was "constructed using individual wood planks," was a "work surface elevated above lower levels," and was "used for supporting employees or materials or both." IFP admits the wood plank was resting on the pre-existing vertical joists, which were part of the cooling tower structure. Therefore, the wood plank used by Stoker meets the definition of a "supported scaffold" since it was a platform "supported by outrigger, beams brackets, poles, legs, uprights, posts, frames, or similar rigid support."

Courts construing a regulation "start—and often end—with the text."

*Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018). The definition of scaffold contains three requirements: (1) a temporary elevated platform, (2) a supporting structure, and (3) used for supporting workers and/or materials. 29 C.F.R. § 1926.450(b). Here, the board was a temporary and elevated platform[3] supported by pre-existing wood beams that formed part of the cooling tower's internal structure and was used for supporting employees. Thus, under the plain language of the regulation, all the elements of the definition of scaffold are satisfied. *See Washington*, 906 F.3d at 1362 ("[A] regulation should be construed to give effect to the natural and plain meaning of its words." (alteration in original) (quotations omitted)).

---

[3] IFP does not challenge the Commission's determination that the board constitutes a "platform" under the definition set forth in 29 C.F.R. § 1926.450(b).

7

Although IFP argues that it is unreasonable to interpret the single wood board on top of a preexisting structure as a scaffold, we disagree. *See Ga. Pac. Corp. v. Occupational Safety & Health Rev. Comm'n*, 25 F.3d 999, 1004 (11th Cir. 1994) (stating the Secretary's interpretation of OSHA standards is entitled to substantial deference, as long as "the Secretary's interpretation is 'consistent with the regulatory language and is otherwise *reasonable*'") (quoting *Martin v. Occupational Safety & Health Rev. Comm'n*, 499 U.S. 144, 156 (1991)). While IFP argues the wood board had no supporting structure or points of anchorage, that argument is belied by the record which shows that the board was atop the pre-existing wood beams that formed the cooling tower's internal structure. It was a "supported scaffold" under the regulation's definition. That IFP did not construct the wooden structure does not change the analysis as the definition does not require that the structure and platform be constructed at the same time or by the same entity. IFP's arguments about the scaffold definition being overly broad are not convincing. *See AJP Const. Inc. v. Sec. of Labor*, 357 F.3d 70, 76 (D.C. Cir. 2004) (rejecting a petitioner's argument the scaffolding regulations are "broad and exceedingly vague" and stating the petitioner "never explains why it could not have known that the platform at issue fit the definition of an outrigger scaffold simply by reading the regulations" (quotations omitted)). The platform at issue in

8

this case clearly fits within the plain language of the scaffold definition,[4] and the ALJ's application of the definition to the facts of this case was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A); *Fluor Daniel v. Occupational Safety & Health Review Comm'n*, 295 F.3d 1232, 1236 (11th Cir. 2002) (explaining we will reverse a legal determination by the Commission or an ALJ only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law).

**PETITION DENIED.**

---

[4] IFP also contends it would be subject to other regulations if the wood board is considered a scaffold.  OSHA did not sanction IFP for violations of other regulations, however; it sanctioned IFP for the platform having insufficient width.  *See AJP Const.*, 357 F.3d at 76 ("Even if the definitions could be viewed as overly broad, that would not support [petitioner's] baseless argument that they failed to provide fair notice with respect to the platform at issue in this case.").