# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

No. 19-1261                 September Term, 2020
<br>FILED ON: DECEMBER 1, 2020

BIRDSBORO KOSHER FARMS CORP.,
<br>                PETITIONER

v.

SECRETARY OF LABOR,
<br>                RESPONDENT

Consolidated with 20-1028

On Petition for Review and Cross-Application for Enforcement of Orders
<br>of the Occupational Safety & Health Review Commission

Before: GARLAND, PILLARD and WILKINS, *Circuit Judges*.

## **J U D G M E N T**

This petition was considered on the record from the Occupational Safety & Health Review Commission and on the briefs filed by the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). The court has accorded the issues full consideration and has determined that they do not warrant a published opinion. See D.C. Cir. R. 36(d). For the reasons stated in the memorandum accompanying this judgment, it is

**ORDERED** and **ADJUDGED** that the petition for review be **DENIED** and the Occupation Safety & Health Review Commission's cross-application for enforcement be **GRANTED**.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or hearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**Per Curiam**

                                  **FOR THE COURT:**
                                  Mark J. Langer, Clerk

BY:    /s/
           Michael C. McGrail
           Deputy Clerk

**MEMORANDUM**

Birdsboro Kosher Farms Corporation petitions for review of an adverse order by the Occupational Safety and Health Review Commission. Birdsboro contends the Commission erred when it affirmed two citations issued by the Occupational Safety and Health Administration (OSHA) after March and April 2016 inspections of the company's Birdsboro, Pennsylvania, poultry processing facility. Birdsboro specifically asks us to vacate and/or reduce the severity of six of the violations supporting the pair of citations. We have jurisdiction, *see* 29 U.S.C. § 660(a), and because substantial record evidence supports each challenged violation, *see id.*; *Fabi Constr. Co. v. Sec'y of Labor*, 508 F.3d 1077, 1081 (D.C. Cir. 2007), we deny the petition for review and grant the application for enforcement of the Commission's order.[1]

First, Birdsboro challenges the Commission's determination that two of its violations were "willful." Those violations arose from Birdsboro's (1) noncompliance with OSHA's lockout/tagout requirements, 29 C.F.R. § 1910.147(c)(4)(i), and (2) failure periodically to review lockout/tagout procedures, *id.* § 1910.147(c)(6)(i). Birdsboro does not dispute that it violated those rules but argues that the record lacks the "substantial evidence of voluntary and intentional disregard for or indifference to the law" necessary to prove willfulness rather than simple negligence. *Kaspar Wire Works, Inc. v. Sec'y of Labor*, 268 F.3d 1123, 1127 (D.C. Cir. 2001). "[E]vidence of an employer's failure to take corrective measures despite prior warnings and citations for similar violations provides a sufficient basis for sustaining a willfulness finding." *AJP Constr., Inc. v. Sec'y of Labor*, 357 F.3d 70, 75 (D.C. Cir. 2004). The Commission recounted in detail that Birdsboro had already repeatedly been cited for similar violations, so was well aware of the lockout/tagout requirements. Substantial evidence of fresh violations on the heels of citations under the same rules, and in the face of written settlements committing Birdsboro to abate the same type of shortcoming, *see* J.A. 454-56 (citing settlements involving lockout/tagout violations in 2013 and 2014), supports these violations' willfulness.

Second, and closely related, the Commission also found that Birdsboro's failure to train employees on lockout/tagout procedures as required by 29 C.F.R. § 1910.147(c)(7)(i)(A) was a "repeat" violation (though the Commission disagreed with the Secretary's contention that the failure to train was itself "willful"). J.A. 479. Birdsboro admits it did not provide the training in question, Pet'r Br. at 18-19, yet asks this court to vacate this violation or reduce its severity classification. Birdsboro contends that it did not realize its failure at the time, pointing the finger at its training consultant for not covering these issues in its training. But the adequacy of the consultant's training is Birdsboro's responsibility, and the record evidence supports the

---

[1] We note that the statute suggests proper venue for the Secretary's enforcement action is "the United States court of appeals for the circuit in which the alleged violation occurred or in which the employer has its principal office," 29 U.S.C. § 660(b), which in this case would be the Third Circuit. Birdsboro has not disputed venue, however, and this court in any event has authority to "make and enter . . . a decree . . . enforcing [the Commission's order] to the extent that such order is affirmed or modified." *Id.* § 660(a).

Commission's determination that Birdsboro knew or in the exercise of reasonable diligence should have known of the shortcomings of the training. *See AJP Constr.*, 357 F.3d at 71. Birdsboro had been cited previously for its lack of lockout/tagout procedures and failure to provide the corresponding training, J.A. 478-80, and senior Birdsboro officials acknowledged their awareness of those violations and the need to remediate them, J.A. 65, 158-59. Had Birdsboro exercised reasonable diligence in the circumstances—for instance, by directing its consultant to administer training that satisfied the standard and then verifying that it was doing so—Birdsboro would have discovered the consultant's failure to deliver the training Birdsboro knew it was required to provide its employees. Substantial evidence thus supports the Commission's determination that this was a repeat infraction.

Third, we reject Birdsboro's request that we vacate or reduce the severity classification of a violation stemming from its failure to install controls to reduce noise levels in the facility's "picking room," which the Commission characterized as a "serious" violation of 29 C.F.R. § 1910.95(b)(1). Birdsboro contends that this violation was not serious because Birdsboro had, at the time of the inspection, furnished its employees with personal protective equipment and installed quieter motors. Pet'r Br. at 20. The rule requires installation of all "feasible administrative or engineering controls," 29 C.F.R. § 1910.95(b)(1), and the record includes substantial evidence both that Birdsboro's mitigation efforts fell far short of lowering noise levels to within acceptable limits, J.A. 498-500, and that there were additional feasible controls available to Birdsboro that it did not put in place, J.A. 35-36. For instance, only after Birdsboro was cited for failure to mitigate unlawful noise levels did it install sound-dampening panels in the picking room, *id.*, illustrating at least one available control it failed to timely deploy. *See SeaWorld of Fla., LLC v. Perez*, 748 F.3d 1202, 1215 (D.C. Cir. 2014).

Fourth, Birdsboro denies that it failed to supply the "variety of suitable hearing protect[ive]" equipment to its employees required by 29 C.F.R. § 1910.95(i)(3), and seeks vacatur of the corresponding violation. As explained in testimony before the Commission, the regulation's variety requirement is designed to ensure that employees have access to equipment that fits comfortably, such as protection appropriate for "different sizes of ears," increasing the likelihood they will use the equipment continuously and correctly. J.A. 172; *see also* OSHA, Standard Interpretations Letter (Oct. 2, 2000), https://www.osha.gov/laws-regs/standardinterpretations/2000-10-02 ("At the very minimum, a choice of at least one type of ear plug and one type of earmuffs must be provided (preferably more)"). Birdsboro specifically complains that the record shows that it did give employees multiple hearing-protective equipment options—earmuffs *and* earbuds. Pet'r Br. at 21-22. At the outset, Birdsboro's argument that by providing both earmuffs and earbuds it satisfied OSHA's minimum standard is forfeit as it was not raised in the administrative proceedings below, *see* 29 U.S.C. § 660(a), and was not raised in Birdsboro's opening brief before this court, *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008). The argument also fails on its merits: Birdsboro's representatives testified during its administrative hearing that Birdsboro had provided only "one kind of earmuff and one kind of earbud," J.A. 108, under circumstances in which all employees were required to wear both kinds of protective equipment at once, *id.* (describing "double hearing protection" requirement). By Birdsboro's own acknowledgement, then, its employees were not, as the rule requires, "given

the opportunity to select their hearing protectors from a variety of suitable [options]." 29 C.F.R. § 1910.95(i)(3).

Fifth, Birdsboro disputes the "serious" classification of its violation of 29 C.F.R. § 1910.132(a), which requires personal protective equipment be "maintained in a sanitary and reliable condition." Substantial evidence supports this violation, too. Inspectors reported seeing Birdsboro employees in the "kill room" wearing torn protective equipment that exposed their skin, and seeing employees wearing into the facility's cafeteria the same personal protective equipment required to be kept sanitary and worn only in the facility's production area—both of which Birdsboro acknowledged before the Commission. J.A. 37-40, 90-95, 109-10, 509-10. We affirm the Commission's classification of this violation as "serious" for three reasons: (1) Birdsboro addresses only the cafeteria incident and does not dispute the kill room event, *see* Pet'r Br. at 22-23; Pet'r Reply at 22-23; (2) Birdsboro forfeited this challenge by failing to raise it during administrative proceedings, *see* 29 U.S.C. § 660(a); and, (3) in any event, substantial evidence in the form of testimony from the OSHA Area Director about the risks of inappropriate use of personal protective equipment in the context of poultry processing—including risks of illness from exposure to animal blood, feces, or bacteria—supports the Commission's "serious" classification, J.A. 175-77; *see also* J.A. 109-10.

Because substantial evidence supports the Commission's determinations as to each of the challenged violations and their severity classifications, we deny Birdsboro's petition for review and grant the Commission's cross-application for enforcement in accordance with this judgment.