# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 22-1226**

**September Term, 2022**

FILED ON: JUNE 23, 2023

RIVERDALE MILLS CORPORATION,
> PETITIONER

v.

SECRETARY OF LABOR,
> RESPONDENT

---

On Petition for Review of a Final Order of the
Occupational Safety & Health Review Commission

---

Before: HENDERSON, KATSAS and WALKER, *Circuit Judges*

## J U D G M E N T

This case came before us on a petition for review of a Final Order of the Occupational Safety and Health Review Commission. We considered the appeal on the record before the Commission and the briefs and arguments of the parties. After considering the issues, we have determined that a published opinion is unnecessary. *See* D.C. Cir. R. 36(d).

We **DENY** the petition for review.

\* \* \*

From its plant in Massachusetts, Riverdale Mills Corporation manufactures welded wire mesh products. To make its PVC-coated mesh, it dips wire mesh in PVC coating. After that, the mesh is rolled and cut by a series of machines.

In April 2019, that process went awry. As an employee tried to adjust the mesh, a machine caught his right arm. It broke his bones and pulled off his skin.

Following the injury, the Occupational Safety and Health Administration investigated. It cited Riverdale for failing to comply with the lockout/tagout standard. That standard helps ensure

1

that machines are properly shut down and rendered inoperative before maintenance is performed on them.

When a Riverdale employee later complained about exposure to hazardous chemicals, OSHA investigated again, resulting in a second and third citation against Riverdale. The second alleged that Riverdale had failed to adequately train employees about hazardous chemicals. The third citation alleged that Riverdale failed to comply with a request to make its safety data sheets readily available.

An administrative law judge issued an order affirming all three citations. The Occupational Safety and Health Review Commission then denied Riverdale's petition for discretionary review. Riverdale timely petitioned this court for review.

We review the ALJ's decision under the substantial evidence standard. *American Wrecking Corp. v. Secretary of Labor*, 351 F.3d 1254, 1261 (D.C. Cir. 2003). We will uphold the order when it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion[s]." *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620 (1966) (cleaned up).

Here, substantial evidence supports the ALJ's order.

## I. Substantial Evidence Shows that Riverdale Violated the Lockout/Tagout Standard

In its first citation, OSHA said Riverdale failed to conduct a periodic inspection of the lockout/tagout procedure for the "Big Spindle." JA Vol. 1 at 30. That inspection is required "at least annually" by 29 C.F.R. § 1910.147(c)(6). For Riverdale's failure to conduct the inspection to constitute a serious safety standard violation, there must be "employee access to the violative conditions," among other requirements. *AJP Construction, Inc. v. Secretary of Labor*, 357 F.3d 70, 71 (D.C. Cir. 2004).[*] So in other words, an employee with authority to do so must have applied lockout/tagout to the Big Spindle without Riverdale having inspected his application thereof within the past year.

Here, substantial evidence shows that a maintenance supervisor named Tom Borden had access to that violative condition. He said he performed lockout/tagout procedures on "C-spindle" in 2019. JA Vol. 3 at 128. And he testified that "Riverdale had never, in the cumulative nine years he worked at the facility, performed a periodic inspection with him, either as a mechanic or a supervisor." JA Vol. 1 at 33.

---

[*] To establish a serious occupational safety standard violation — or a health standard violation — the Secretary of Labor must prove four elements: (1) "the applicability of the cited standard;" (2) "the employer's noncompliance with the standard's terms;" (3) "employee access to the violative conditions;" (4) "the employer's actual or constructive knowledge of the violation." *AJP Construction, Inc.*, 357 F.3d at 71.

2

Riverdale's main argument is that Borden did not have access to the violative condition because there was no proof that the "Big Spindle" identified in OSHA's first citation is the same spindle as the "C-spindle" mentioned by Borden.

But there is substantial evidence that the Big Spindle is the C-Spindle. For starters, Borden said the "C[-]Spindle" refers to the "[c]oating line spindle." JA Vol. 2 at 219. And the coating line feeds mesh only to the biggest of the three spindles near it. *See* JA Vol. 2 at 491 (photograph). So Borden was probably referring to the spindle directly connected to the coating line (the Big Spindle) when he talked about locking out the "C[-]Spindle." JA Vol. 2 at 219. Plus, Borden seemed to refer somewhat interchangeably to the Big Spindle and the C-Spindle. For example, when referring to the C-Spindle, he said he locked it out with a procedure that applied to the "Big spindle coating line." JA Vol. 2 at 220.

When that evidence is taken together, a "reasonable mind" can conclude that the Big Spindle is the C-Spindle. *Consolo*, 383 U.S. at 620.

## II. Substantial Evidence Shows that Riverdale Violated Two Hazard Communication Standards

When employees are potentially exposed to hazardous chemicals in their work area, 29 C.F.R. § 1910.1200(h)(1) requires an employer to provide protective training.

Here, an employee named Luis Trinidad said he had not received any training on hazardous chemicals. Riverdale knew there were hazardous chemicals in Trinidad's workspace. So substantial evidence suggests Riverdale failed to "provide employees with effective information and training on hazardous chemicals in their work area at the time of their initial assignment." *Id.*

In addition, 29 C.F.R. § 1910.1200(g)(11) requires employers to make safety data sheets available when designated representatives request them. But in this case, when a designated representative requested safety data sheets for "any [chemical] not already provided," Riverdale provided only *some* of the requested sheets. JA Vol. 3 at 169.

Riverdale argues that the safety data sheet request could "only be understood as requesting [safety data sheets] applicable to possible air contaminants," which Riverdale provided. Pet. Br. 22. But the request for safety data sheets was for "any not already provided." JA Vol. 3 at 169. And because that statement was made during a tour that included the coating line and galvanizing line, Riverdale was required to produce safety data sheets for all chemicals used in the coating line and galvanizing line — not just possible air contaminants. Riverdale's failure to do so violated 29 C.F.R. § 1910.1200(g)(11).

\*   \*   \*

Because all three citations were supported by substantial evidence, we **DENY** the petition for review.

3

\* \* \*

This disposition is unpublished. *See* D.C. Cir. R. 36(d). We direct the Clerk to withhold this mandate until seven days after resolution of a timely petition for panel or en banc rehearing. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk

4